

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  40602-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OMAR IVAN MANCINAS GARZA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — A jury found Omar Mancinas Garza guilty of attempted rape of a child in the second degree and communication with a minor for immoral purposes.  The charges stemmed from an undercover operation conducted by a law enforcement officer posing as a fictious 13-year-old girl.  Mr. Mancinas Garza appeals, arguing his trial attorney was ineffective and cumulative error deprived him of a fair trial.  We disagree with his arguments and affirm.

BACKGROUND

In August 2022, the Washington State Patrol Missing and Exploited Children Task Force (Task Force) conducted an undercover online "Net Nanny" operation in Grant County, Washington.  Verbatim Rep. of Proc. (VRP) at 303.  The operation consisted of Detective Sergeant Jake Klein posing as a fictious 27-year-old woman named "Crystal" on an Internet dating website called "Badoo."  Clerk's Papers (CP) at 17.  Mr. Mancinas

Garza responded to the invented profile by messaging "Crystal" on August 22, 2022.

"Crystal" replied to Mr. Mancinas Garza and informed him that she was actually 13 years

old. Mr. Mancinas Garza and "Crystal" eventually agreed to engage in sexual acts, and

he was arrested when he arrived at their meeting location. His cellphone was seized and

relevant data later extracted. Mr. Mancinas Garza participated in a recorded interview

with law enforcement following his arrest.

The State charged Mr. Mancinas Garza with attempted rape of a child in the

second degree and communication with a minor for immoral purposes. The case

proceeded to a jury trial.

Defense counsel moved in limine to exclude the recorded interview from

admission into evidence, arguing that portions of the interview "should only be allowed if

the contents of the video would be admissible in the form of testimony rather than a

video." CP at 73. Defense counsel stated, "[T]he prosecutor should elicit testimony,

where appropriate, point-by-point, about what exactly [Mr. Mancinas Garza] was asked,

and what his response was." CP at 73. Defense counsel also moved to exclude several

statements Detective Jimmy Welsh made during the interview, claiming the statements

were improper character and propensity evidence and were also inadmissible under

ER 404(b). The court reserved ruling on excluding the recording because it had not

"had a chance to review [the recording]." VRP at 30.

Additionally, defense counsel sought the exclusion of "[p]rofile evidence, in the form of testimony by law enforcement officers that criminals have certain characteristics" that could suggest that Mr. Mancinas Garza shares those characteristics. CP at 84 (emphasis omitted). The court granted the motion.

Defense counsel also moved to exclude testimony related to "conversation[s] about what the detectives would find on [Mr. Mancinas Garza's] cell phone if they looked," including a discussion of whether Mr. Mancinas Garza viewed child pornography. CP at 86 (emphasis omitted). He contended this type of evidence was improper under ER 404(b) and would be "propensity evidence and it's more prejudicial than probative." VRP at 33. The State opposed Mr. Mancinas Garza's motions to exclude testimony related to whether "[Mr. Mancinas Garza] masturbates to child pornography or [has] seen child pornography or pornography in general" because such testimony would be admissible "with regard to that entrapment defense." VRP at 34-35. Although defense counsel asserted that Mr. Mancinas Garza would not be raising entrapment, the State argued evidence of Mr. Mancinas Garza viewing child pornography should be allowed if Mr. Mancinas Garza raised an entrapment defense. The court ruled that evidence about what type of pornography Mr. Mancinas Garza views and whether Mr. Mancinas Garza had previously viewed child pornography or masturbates to child pornography was admissible only "in rebuttal if a legitimate entrapment defense is raised." VRP at 39.

3

At trial, Detective Sergeant Dan McDonald of the Task Force testified about the Net Nanny operations, explaining that the Task Force deals with "proactive and reactive cases." VRP at 234. He described "proactive work" as "try[ing] to identify people that are online that are communicating with minors for immoral purposes." VRP at 235. The court overruled defense counsel's objection to this testimony. Detective Sergeant McDonald also explained the training and role of the Task Force's interview team:

> Yeah, so the interview team, we have two-person interview teams, everybody that's assigned to an interview team, the primary interviewer is specially trained by Dr. Joe Sullivan, who is a—he's a psychologist based out of Ireland, that has spent his whole career studying sex offenders, and he has created an interview model where when you talk to a sex offender, you can extract information that may identify victims.

VRP at 256.

Trooper Carol Fuchs, who was 29 years old at the time, testified that she took "selfies" for law enforcement to use in the Net Nanny operation. VRP at 487. She told the jurors of how she would take photographs in a manner similar to how younger people photograph themselves, "[j]ust kind of playful, not wearing as much makeup, just appearing younger, wearing more younger clothes." VRP at 488. Trooper Fuchs further participated in the operation by reviewing chats and waiting on standby to take additional photographs.

The State offered, and the court admitted, an extraction report of data found on Mr. Mancinas Garza's cellphone. The extraction consisted of a "text message exchange" and photographs consisting of "a selfie of the undercover, or the undercover persona, and

4

that's of a female standing in front of it looks like a mirror posing." VRP at 393, 375.

The call log extraction from Mr. Mancinas Garza's cellphone revealed two outgoing telephone calls to the undercover officer's telephone number. A text message from Mr. Mancinas Garza's cellphone depicting Trooper Fuchs, posing as "Crystal," was admitted into evidence.

The State reported to the court during trial that it redacted portions of Mr. Mancinas Garza's recorded interview. The State indicated it had "added a last-minute edit" and removed "one small clip, about 30 seconds, that needed to come out" regarding a question by an investigator "about what [Mr. Mancinas Garza] does when he's not at school, and basically referencing where he was employed." VRP at 407-08.

The State then offered the testimony of Detective Sergeant Klein who created "Crystal's" Badoo profile and worked as an "undercover chatter" during the operation. VRP at 414. Detective Klein testified that a profile with the username "Ox," who was later identified as Mr. Mancinas Garza, messaged "Crystal" on August 22, 2022, and the conversation quickly moved from the Badoo application to text messaging through an application called "Callyo." VRP at 436-37.

Detective Klein read a sampling of the messages between "Crystal" and Mr. Mancinas Garza to the jury:

> ["CRYSTAL"]: r u cool that im young?
>
> [MR. MANCINAS GARZA]: Yeah r u cool that I'm old lol

5

["CRYSTAL"]: ya I like older lol

["CRYSTAL"]: im 13 so im into more mature (happy face emoji)

[MR. MANCINAS GARZA]: You are how old?

["CRYSTAL"]: 13 lol but mature like I said[1]

. . . .

[MR. MANCINAS GARZA]: Hope you are not looking to get me in trouble because I'm more mature than you?

. . . .

[MR. MANCINAS GARZA]: Are you wanting to meet up sometime

VRP at 441-42.

Mr. Mancinas Garza then called "Crystal." Mr. Mancinas Garza spoke with Agent Isabelle Ghini of the FBI, posing as "Crystal," for over 13 minutes. Agent Ghini detailed a portion of that telephone conversation to the jury:

[PROSECUTOR]: And what age did you identify yourself as?

[AGENT GHINI]: Thirteen.

[PROSECUTOR]: How many times did you do that?

[AGENT GHINI]: Multiple. According to my report, at least—I believe at least three times.

. . . .

[AGENT GHINI]: . . . He asked me about why the website said that I was 28.[2] And I told him that it was because I couldn't list my true age.

---

[1] "Crystal" sent a photo to Mr. Mancinas Garza before sending this text message.

[2] "Crystal's" Badoo profile lists her as 27 years old.

6

And then he said—he laughed and said that that made sense. And then he expressed concern that he could get in trouble.

VRP at 473, 475.

Mr. Mancinas Garza requested to meet "Crystal." Agent Ghini asked Mr. Mancinas Garza "what he likes." VRP at 477. The two then discussed various sexual acts. Agent Ghini again told Mr. Mancinas Garza that she "was only 13" and has not "done much." VRP at 477. Mr. Mancinas Garza asked "Crystal" if she was virgin. After "Crystal" confirmed she was a virgin, Mr. Mancinas Garza responded that "he's not that big, so it wouldn't hurt and would be good for a first time." VRP at 478. Detective Ghini testified that Mr. Mancinas Garza and "Crystal" agreed to meet at "Crystal's" house while her mother was working.

Mr. Mancinas Garza and "Crystal" continued exchanging text messages after the telephone call. Mr. Mancinas Garza sent "Crystal" a message asking if she could "get away during the day in the morning." VRP at 443. "Crystal" replied, "I could sneak out [. . .] then we just like do it in ur car?" VRP at 443.

On the day the two agreed to meet, Mr. Mancinas Garza and "Crystal" exchanged the following text messages:

> [MR. MANCINAS GARZA]: What time does your mom leave to work?
>
> ["CRYSTAL"]: she leaves at 4 for work
>
> [MR. MANCINAS GARZA]: Can you sneak out

7

. . . .

["CRYSTAL"]: Did you want to head this way now so u can just come over when she leaves?

. . . .

[MR. MANCINAS GARZA]: Yeah if you're ok with that

["CRYSTAL"]: Ya im cool with that way u can just come over as soon as shes gone lol

[MR. MANCINAS GARZA]: Ok but I'll need to know where

["CRYSTAL"]: Ya lemme look up a gas station by my house rq

. . . .

[MR. MANCINAS GARZA]: Just be honest with me. Hope you are not trying to get me caught up in some bs because you are younger than me baby

[MR. MANCINAS GARZA]: I'd be in deep shit lol

. . . .

[MR. MANCINAS GARZA]: . . . I just don't want to get caught

VRP at 444-45.

"Crystal" provided Mr. Mancinas Garza with the address to a Chevron gasoline station and instructed Mr. Mancinas Garza to "lmk when u get [to the Chevron]" and to send a "selfie" of himself in the parking lot, at which point she would provide her home address. VRP at 448-49. "Crystal" provided Mr. Mancinas Garza with her home address after he sent the two photographs. Mr. Mancinas Garza was arrested on his arrival.

The State provided a redacted version of the recorded interview for defense counsel to review. After reviewing the redacted recording, defense counsel stated, "I believe that largely the video comports with the court's prior rulings" and renewed his objection to portions of the interview that included "a monologue by Detective Welsh, giving his opinions." VRP at 499. The court clarified that "all of [defense counsel's] other objections are still outstanding," and defense counsel agreed. VRP at 499. Furthermore, the court stated it intended to provide two limiting instructions to the jury before they watched the recorded interview. In light of the instructions, the court overruled defense counsel's objections to the recorded interview.

Mr. Mancinas Garza testified in his own defense. Mr. Mancinas Garza testified that he believed the picture associated with the Badoo profile appeared to be a 27-year-old woman and that he had no reason to suspect "Crystal" was younger than her stated age. When asked how he reacted when "Crystal" told him she was 13 years old, Mr. Mancinas Garza responded, "I didn't—I didn't believe. I took it as a joke, that she's stating, LOL. LOL means laugh out loud. So I did. I laughed out loud." VRP at 551. Mr. Mancinas Garza testified he "would have never thought ["Crystal"] was 13, just by the way she was conversating and the texts that she sent." VRP at 555-56.

Mr. Mancinas Garza claimed that phone call with "Crystal" confirmed his belief that "[s]he was a 27-year-old, or she was an adult." VRP at 558. Mr. Mancinas Garza acknowledged he drove from Richland to Moses Lake to meet "Crystal" and did not

believe he was meeting with a 13-year-old child for sex during the trip. On arrival at "Crystal's" house, Mr. Mancinas Garza saw "the brunette from the picture that she had sent" and "recognized the person at the door as the person that had sent [him] the picture." VRP at 564. Mr. Mancinas Garza claimed the person in the doorway appeared to be 27 years old.

The jury ultimately found Mr. Mancinas Garza guilty of attempted rape of a child in the second degree and communication with a minor for immoral purposes. The court sentenced Mr. Mancinas Garza to an indeterminate sentence of 80 months to life.

Mr. Mancinas Garza timely appeals.

ANALYSIS

Mr. Mancinas Garza argues he was afforded ineffective assistance from his trial attorney when his attorney (1) failed to raise the defense of entrapment or request the jury be instructed on entrapment; (2) failed to object to improper profile evidence, opinion evidence, and character evidence; and (3) agreed to curative jury instructions that constituted improper judicial comments on the evidence. Lastly, Mr. Mancinas Garcia claims cumulative error deprived him of a fair trial. We disagree with Mr. Mancinas Garza's first two arguments and decline review of his third. Finding no error, we reject Mr. Mancinas Garza's cumulative error argument.

Defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d

104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue

of constitutional magnitude that may be raised for the first time on appeal. *State v.*

*Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). We review ineffective assistance of

counsel claims de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995). We

examine the entire record when considering a claim of ineffective assistance of counsel.

*State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

To prevail on a claim of ineffective assistance of counsel, the appellant bears the

burden of showing (1) that his attorney's performance fell below an objective standard of

reasonableness based on consideration of all the circumstances and, if so, (2) that there is

a reasonable probability that but for his attorney's poor performance, the outcome of the

proceedings would have been different. *Id.* at 334-35. If either element is not satisfied,

the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

A defendant alleging ineffective assistance of counsel bears the burden of showing

deficient representation. *McFarland*, 127 Wn.2d at 335. In reviewing the record, there is

a strong presumption that counsel's performance was reasonable. *Id.* To overcome the

presumption, "the defendant must show in the record the absence of legitimate strategic

or tactical reasons supporting the challenged conduct by counsel." *Id.* at 336.

Even if we find that trial counsel's performance was deficient, a defendant must

affirmatively prove prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816

(1987). This requires more than simply showing that "the errors had some conceivable

11

effect on the outcome." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant demonstrates prejudice by showing that the proceedings would have been different but for counsel's deficient representation. *McFarland*, 127 Wn.2d at 337.

ENTRAPMENT DEFENSE

Mr. Mancinas Garza contends his trial attorney was ineffective in not pursuing an entrapment defense and in failing to request the court instruct the jury on the defense of entrapment. We disagree.

Defense counsel has a duty to investigate all reasonable defenses, but "no duty to pursue strategies that reasonably appear unlikely to succeed." *State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011). "Generally, choosing a particular defense is a strategic decision 'for which there is no correct answer, but only second guesses.'" *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 745, 101 P.3d 1 (2004) (quoting *Hendricks v. Calderon*, 70 F.3d 1032, 1041 (9th Cir. 1995)).

An attorney may be ineffective in failing to request a jury be instructed on a potential defense. *In re Pers. Restraint of Hubert*, 138 Wn. App. 924, 929, 158 P.3d 1282 (2007). To prevail on a claim of ineffective assistance of counsel based on a trial attorney's failure to request a jury instruction, an appellant is required to establish that (1) had the instruction been requested, the trial court would likely have given it, and

(2) that the failure to request the instruction was not a legitimate strategic or tactical trial decision. *State v. Powell*, 150 Wn. App. 139, 154-55, 206 P.3d 703 (2009).

Here, the court likely would have instructed the jury on entrapment had defense counsel requested the instruction. "Entrapment" is a defense when:

> (a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and
>
> (b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.

RCW 9A.16.070(1). Entrapment is unavailable as a defense where law enforcement merely provided "an opportunity to commit a crime." RCW 9A.16.070(2).

A defendant is required to put forth "some evidence on the elements of the defense" of entrapment before a jury will be instructed on the defense. *State v. Arbogast*, 199 Wn.2d 356, 366-68, 506 P.3d 1238 (2022). This means the defense must present evidence of inducement and predisposition. *Id.* at 366, 374. The pertinent inquiry for an entrapment defense "is whether a fact finder could reasonably conclude from the evidence that the defendant had no predisposition to commit the crime until the intent was implanted in his or her mind by police and that the defendant was induced to commit the crime through fundamentally unfair efforts by law enforcement." *Id.* at 379.

Law enforcement operated an undercover operation and communicated with Mr. Mancinas Garza on an adult platform while posing as a 27-year-old woman. It was only after Mr. Mancinas Garza responded to the posting that "Crystal" identified herself as a

13

13-year-old child. The two exchanged several messages before agreeing to meet for sexual acts. Mr. Mancinas Garza testified that he believed "Crystal" was an adult, despite being repeatedly informed that "Crystal" was 13 years old.

The State concedes that Mr. Mancinas Garza likely meets the prima facie standard to be entitled to the entrapment defense. We agree, based on the evidence presented at trial, that the fact finder could reasonably conclude that Mr. Mancinas Garza was not predisposed to commit the crimes until the intent was implanted in his mind by law enforcement and that he was induced to commit the crime through fundamentally unfair efforts by law enforcement. Consequently, the trial court would likely have instructed the jury on the defense of entrapment had the defense requested the instruction.

We next consider whether Mr. Mancinas Garza established that his attorney's failure to request the entrapment instruction for the jury was not a legitimate strategic or tactical trial decision.

Defense counsel had strategic and tactical reasons justifying his decision not to pursue an entrapment defense. Namely, the State likely would have been allowed to present evidence of Mr. Mancinas Garza's predisposition to commit the crime of attempted rape of a child and communication with a minor for immoral purposes had the defense been asserted. Specifically, the State informed the court and Mr. Mancinas Garza that it would seek to introduce evidence of Mr. Mancinas Garza's cellphone usage and pornography preferences should the defense be asserted. Although the court

14

excluded such evidence from the State's case-in-chief, the court cautioned that the evidence may be admissible "in rebuttal if a legitimate entrapment defense is raised." VRP at 39. Under these circumstances, defense counsel's decision to forego the defense of entrapment was reasonable.

Because highly prejudicial evidence likely would have been admitted had Mr. Mancinas Garza pursued an entrapment defense, Mr. Mancinas Garza failed to show the absence of legitimate strategic or tactical reasons supporting his attorney's decision to forego an entrapment defense. Thus, Mr. Mancinas Garza's ineffective assistance of counsel claim fails.

PROFILE, OPINION, AND CHARACTER EVIDENCE

Mr. Mancinas Garza argues his trial attorney was ineffective in failing to object to Detective Sergeant McDonald's "inadmissible profile and/or opinion testimony," admission of his recorded interview with law enforcement, and to statements Detective Welsh made during the recorded interview. Br. of Appellant at 51. We disagree with each of Mr. Mancinas Garza's arguments because his attorney properly objected.

If an appellant bases his claim of ineffective assistance of counsel on his trial attorney's failure to object, he "'must show that the objection would likely have succeeded.'" *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)). "A few or even several failures to object are not usually cause for finding that an attorney's conduct has fallen below the

objective standard of conduct." *Id*. at 250. "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *Id*. at 248 (quoting *Crow*, 8 Wn. App. 2d at 508). If defense counsel fails to object to inadmissible evidence, this constitutes deficient performance. *Id.*

Mr. Mancinas Garza first argues his trial attorney was ineffective in failing to object to portions of Detective Sergeant McDonald's inadmissible profile and opinion testimony. Notably, Mr. Mancinas Garza does not challenge the court's ruling on these objections. Mr. Mancinas Garza challenges the following testimony:

> [DETECTIVE SERGEANT MCDONALD]: On the proactive side of the house, we do undercover work where we essentially create undercover profiles and we identify people who are online that are trying to—
>
> [DEFENSE COUNSEL]: Objection, your Honor.
>
> THE COURT: Overruled on this in explaining in general what it does. You can answer.
>
> [DETECTIVE SERGEANT MCDONALD]: Thank you.
> So the proactive work is when we go undercover online and we create profiles where we try to identify people that are online that are communicating with minors for immoral purposes.
>
> . . . .
>
> [DETECTIVE SERGEANT MCDONALD]: . . .The idea with the Net Nanny operation is to identify people that are online communicating with minors for immoral purposes, and they're communicating with us.
>
> [DEFENSE COUNSEL]: Objection, your Honor.

16

THE COURT: Overruled. You can answer.

[DETECTIVE SERGEANT MCDONALD]: Thank you.

They're communicating with us instead of communicating with an actual minor. We'll investigate the people that we're communicating with, and then if the investigation progresses, we'll provide them a location where our undercovers are there. And then when they show up, then we'll arrest them for the attempted rape of a child.

VRP at 235-36. Because defense counsel properly objected to the testimony Mr. Mancinas Garza identifies on appeal, his ineffective assistance of counsel claim based on his attorney's failure to object fails.

Mr. Mancinas Garza next challenges Detective Sergeant McDonald's testimony regarding the Net Nanny "interview team." Br. of Appellant at 54-55. After providing a block quotation of the challenged testimony, Mr. Mancinas Garza claims, "The foregoing excerpts, when taken in conjunction with the testimony concerning the participants backgrounds, served to paint Mr. Garza with a broad brush as a preconceived child molester." Br. of Appellant at 55. We decline review of Mr. Mancinas Garza's claimed error related to the interview team based on his failure to provide a meaningful analysis or reasoned argument. *See Wiklem v. City of Camas*, 31 Wn. App. 2d 575, 593, 551 P.3d 1067 (2024), *review denied*, 4 Wn.3d 1002, 561 P.3d 739 (2025).

Finally, Mr. Mancinas Garza claims his attorney was ineffective in failing to adequately redact the recorded interview. The lack of redaction, according to Mr. Mancinas Garza, resulted in the admission of improper character evidence, improper profile evidence, impermissible opinion evidence, and violated ER 404(b). We conclude

17

defense counsel was not ineffective because he properly objected to the entirety of the recording as well as the specific statements complained of on appeal.

Defense counsel moved in limine for exclusion of the entire recording and further requested the court exclude specific statements Detective Welsh made during the interview. During trial, defense counsel again objected to statements consisting of "mostly a monologue by Detective Welsh, giving his opinions." VRP at 499. The court overruled the objections. Mr. Mancinas Garza does not challenge the trial court's rulings. Because defense counsel repeatedly objected to admission of the recorded interview— both in its entirety and to specific statements—Mr. Mancinas Garza's ineffective assistance of counsel claim fails. Moreover, as reflected by the court's ruling on the exclusion of specific aspects of the recording, any objection lodged by defense counsel would have proven unsuccessful.

LIMITING INSTRUCTIONS

Mr. Mancinas Garza argues his attorney was ineffective in agreeing to the trial court giving the jury limiting instructions, claiming the instructions amounted to a judicial comment on the evidence. We decline review of this claim due to the inadequacy of Mr. Mancinas Garza's briefing.

An appellant's brief is required to contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). We will therefore not comb through the record to

find support for an appellant's argument. Moreover, "'passing treatment of an issue or lack of reasoned argument is insufficient to merit our consideration.'" *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)). "A party waives an assignment of error not adequately argued in its brief." *Milligan v. Thompson*, 110 Wn. App. 628, 635, 42 P.3d 418 (2002).

Here, Mr. Mancinas Garza argues, without citation to the record or a quotation of the challenged instructions, that "[t]he trials court's limit[ing] instructions" amounted to a judicial comment on the evidence. Br. of Appellant at 80. Mr. Mancinas Garza does not provide citations to the challenged instructions, fails to articulate whether the court gave the instructions orally or in writing, and fails to explain how the instructions constituted an improper comment on the evidence. Consequently, we decline review of his claimed error related to the instructions.

CUMULATIVE ERROR

Mr. Mancinas Garza argues the cumulative effect of the errors deprived him of a fair trial. We disagree.

"Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). To prevail under the cumulative error doctrine, an appellant must show that while multiple errors "standing alone . . . might not be of

19

sufficient gravity to constitute grounds for a new trial, the combined effect of the accumulation of errors most certainly requires a new trial." *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984).

Because we disagree that Mr. Mancinas Garza's claimed errors occurred, cumulative errors could not have led to a fundamentally unfair trial.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Staab, C.J.

Lawrence-Berrey, J.